

$400

HB

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HB

| | |
|---|---|
| SBG MANAGEMENT SERVICES, INC. , AS THE AUTHORIZED AGENT FOR COLONIAL GARDEN REALTY CO., LP; ELRAE GARDEN REALTY CO., LP; FAIRMOUNT GARDEN REALTY, CO., LP; FERN ROCK GARDEN REALTY CO., LP; MARCHWOOD REALTY CO., LP; MARSHALL SQUARE REALTY CO., LP; OAK LANE GARDEN REALTY CO., LP; AND SIMON GARDEN REALTY CO., LP<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PHILADELPHIA<br><br>Defendant. | CIVIL ACTION NO.<br><br>**17   4102**<br><br>**FILED**<br>SEP 1 3 2017<br>KATE BARKMAN, Clerk<br>By_____Dep. Clerk |

## CIVIL ACTION COMPLAINT

SBG Management Services, Inc., the authorized agent and property manager for plaintiffs: Colonial Garden Realty Co., LP; Elrae Garden Realty Co., LP; Fairmount Garden Realty Co., LP; Fern Rock Garden Realty Co., LP; Marchwood Realty Co., LP; Marshall Square Realty Co., LP; Oak Lane Garden Realty Co., LP and Simon Garden Realty Co., LP, by and through their attorneys, Moriconi Flowers Ltd. and Donna Ross, Esquire, file the following Civil Action Complaint and in support thereof, aver as follows:

I.     **INTRODUCTION**

5

1.      The matter before the Court is a Civil Action Complaint brought against the City of Philadelphia ("the City" or "City") under, *inter alia*, 42 U.S.C. § 1983 by owners of residential and commercial rental properties in Philadelphia County in connection with the City of Philadelphia's policy and practice of arbitrarily and capriciously imposing liens and wrongfully over-collects late fees and finance charges for gas debts through and/or in conjunction with PGW on real property in violation of the United States Constitution's guarantee of procedural due process.

2.      Defendant City of Philadelphia is a municipal subdivision of the Commonwealth of Pennsylvania, the owner of Philadelphia Gas Works, and as such acts under color of state law. PGW is the entity through which the City of Philadelphia provides gas services to residences and businesses within the City limits.

3.      Since July 1, 2000, PGW has had the legal status of a public utility subject to the jurisdiction of the Pennsylvania Public Utility Commission. Following the passage of Act 201 amending the Public Utility Code, 66 Pa. C.S.A. §1401, et. seq. which took effect in December 2004, PGW, as a "city natural gas distribution operation furnishing gas service to a property" became "entitled to impose or assess a municipal claim against the property and file as liens of record claims for unpaid natural gas distribution service and other related costs, including natural gas supply in the court of common pleas of the county in which the property is situated or, if the claim for the unpaid natural gas distribution service does not exceed the maximum amount over which the Municipal Court of Philadelphia has jurisdiction, in the Municipal Court of Philadelphia, pursuant to sections 3 and 9 of the Municipal Claim and Tax Lien Law...(66 Pa. C.S.A. §2201, et. seq)."66 Pa. C.S.A. §1414(a).

2

4.      These liens are filed to enforce alleged gas utility debts owed by customers of records, some of whom may be non-owner tenants, but those unpaid tenant debts are imposed on the property address of record without meaningful, effective, timely notice to the property owners and without meaningful opportunity to be heard. When there is accumulated gas debts owed by tenants, landlords are not notified of the debt by PGW and landlords may not learn of the tenants' debt until long after the tenants have already vacated the property.

5.      By following an inherently flawed system of systematically entering liens against properties, it has been the custom and ordinary business practice of the City to impose these liens without any notice to the property owner at all. In fact, a property owner would only learn that a lien had been placed on his/her property when it would appear in a title report obtained in connection with an attempt to sell or refinance the property, i.e., at a moment when the owner has little choice but to pay off the liens or risk the collapse of the pending sale or refinancing transaction.

6.      "A lien is a charge on property, either real or personal, for the payment or discharge of a particular debt or duty in priority to the general debts or duties of the owner. It encumbers property to secure payment or performance of a debt, duty or other obligation. Liens fall into three categories: common law liens, equitable liens and statutory liens." *London Towne Homeowners Ass'n v. Karr*, 866 A.2d 447, 451(Pa. Cmwlth. 2004) (notes and citations omitted).

7.      Moreover, in order to maximize its collection of late fees and finance charges, PGW has utilized a long standing practice to assess late payment charges at 1.5% per month on any outstanding balance on an active account, even if the said debt is the

3

subject of a municipal lien filed with the Court of Common Pleas. Customers are unaware of this practice because PGW does not inform customers of this practice verbally or in writing; nor is this practice is disclosed to customers on its billing statements or its customer's statement of accounts.

8.      PGW's application of partial payments out of order so that the most recent late payment charges are paid before the gas charges due for prior service constitutes a failure to provide adequate and reasonable service in accordance with 66 Pa. C.S.A. § 1501, as well as a violation of 52 Pa.Code [§§] 56.22, 56.23 and 56.24. In addition, PGW's improper inclusion of liened amounts in the outstanding balance under PGW's tariff also constitutes a failure to provide adequate and reasonable service in accordance with 66 Pa. C.S.A. § 1501.

9.      For the next several years, between 2005 and 2012, PGW "at times" placed liens for its customers' unpaid gas bills on the real properties at which the gas had been provided pursuant to Act 201 and the Municipal Claim and Tax Lien Law ("MCTLL), irrespective of the fact that the customers were not the owners of the properties liened. Defendant did so using a "slightly automated" but primarily manual system. PGW failed to send notice of an intent to lien or notice that they placed a lien on the property to the property owner.

10.     Upon information, belief and after reasonable investigation, in or about the year 2009, PGW began utilizing the computerized system for automatically liening real estate which it had developed, called the "Lien Management System" or "LMS." The goal of this system, which is entirely automated, is the processing of hundreds of liens per day in a more expeditious and cost effective manner.

4

11.     In or about 2013, the City began sending form letters to some of SBG's managed properties after the lien had been filed, merely informing them of that fact. This notice merely states the amount to be liened without any reference to the time period when the gas debt was incurred or by whom the debt is charged against; where the lien imposed included tenant debt, the notice fails to disclose the identity of the particular tenant that accrued the unpaid gas bill and the period of time the gas service was furnished. The notice fails to offer any means to obtain such information, and fails to provide any opportunity to question or challenge the underlying facts surrounding the supposed debt before the lien is imposed. (True and correct copies of sample lien notices sent to plaintiffs are attached hereto as Exhibit 1).

12.     No legitimate governmental interest is served in denying notice to the property owner at the time the alleged delinquency arises, i.e., when the owner could take steps to remedy the delinquency, or for denying the property owner a timely and meaningful method for contesting the amount and appropriateness of the lien before it is imposed. Instead, the City and PGW have improperly and unconstitutionally collected millions of dollars in fees, costs, and interest from residential and commercial property owners like Plaintiffs whose due process rights have been violated by the City and PGW's actions.

13.     PGW reorders customer payments in order to reduce more recent noninterest bearing balances while leaving older interest bearing balances.

14.     PGW does not manage bills so as to minimize customers' arrears.

15.     The practice of payment reordering constitutes a rate because it is a practice which affects the compensation to be paid to PGW beyond the authorized Tariff.

5

16.     As a rate, payment reordering has not been presented to the Pennsylvania Public Utility Commission for review and approval.

17.     As a rate, payment reordering is not cost based or mandated by any costs incurred by PGW.

18.     The reordering of payments has been found to be an unreasonable commercial practice in analogous circumstances (referring to the banking and credit card industry). *See* GUTIERREZ v. WELLS FARGO BANK, 730 F. Supp.2d 1080 (N.D. Cal. 2010).

19.     PGW does have a long standing policy and practice of not disclosing its payment posting reordering accounting scheme which leads to inflated collection of monies beyond the allowable sums under the Tariff imposed interest rate, penalties and late payment charges imposed on all accounts. (True and correct copies of plaintiffs' sample bills are attached hereto as Exhibit 2).

20.     The collection of those inflated interest, penalty, and finance charges constitutes an illegal pricing decision, which ignores the application of the legal statutory post-judgment interest rate of 6% simple per annum to unpaid sums filed as lien judgment by the City with the Philadelphia Common Pleas Court under the authority of the Municipal Claim and Tax Lien Law. Moreover, PGW's policy and practice of the reordering of payments practice is, in effect, or indirectly, charging and collecting more than 18% simple interest on outstanding service charges, which is a violation of 52 Pa.Code §56.23 and §56.24 and the Pennsylvania Public Utility Code.

21.     The reordering of payments practice affects any residential customer who is in arrears with PGW. And, based on the Pennsylvania Public Utility Commission's Bureau of Consumer Service's annual reports on collections performance, PGW has roughly 80,000

6

residential customers in arrears in any given month. *See, 2015 "Universal Service Program & Collections Performance of the Pennsylvania Electric Distribution Companies and Natur Gas Distribution Companies",* published by the Pennsylvania Public Utility Commissio Bureau of Consumer Services. [1]

22.    In addition to the City, upon reasonable investigation and belief, senior members of PGW's Board have also improperly benefitted from this practice through a bonus scheme which awarded large sums of money to employees of PGW and others similarly situated as a result of "profits" and revenues generated in large part by this improper and unconstitutional practice.

23.    Despite having numerous opportunities to communicate, inform and respond to plaintiffs' repeated inquiries regarding PGW's accounting, billing and collections scheme, in which senior personnel had the ability to disclose PGW's payment posting scheme as to how payments made to customer's gas accounts, applies interest, penalties and late fees, key PGW personnel failed to address plaintiffs' disputes for more than ten years and elected not to disclose the material information requested by plaintiffs on the PGW payment applications to accrued bills and collections. In 2012, without explaining its accounting and billing scheme regarding plaintiffs accounts at issue, PGW abruptly discontinued communications with SBG, plaintiffs' agent, and directed them to file a complaint with the Pennsylvania Public Utility Commission ("PUC").

24.    In May and June 2012, plaintiffs initiated litigation with PGW by filing complaints with the Pennsylvania Public Utility Commission (hereinafter referred to

---

[1]*http://www.puc.state.pa.us/General/publications_reports/pdf/EDC_NGDC_UniServ_Rpt2015.pdf*

"PUC"), the only agency duly authorized to address public utility billing and collections disputes, but not liens docketed with the City[2].

25.     Only in July 2014, after years of contentious litigation and discovery, pursuant to a compelled discovered order issued by the PUC administrative law judge did PGW disclose its accounting, billing and collections methodology. As a result of PGW "specially-created", produced document, plaintiffs discovered PGW's long-standing practice of increasing its collections of revenues and tariff rates by re-sequencing payments posted such that non-interest bearing late fees and service fees are paid before interest bearing prior balances leaving a higher balance of interest bearing debt that is subject to 18% simple interest. Moreover, it was discovered at that time that PGW assessed 18% compounded interest for late fees on commingled debts set to judgment as lien within accrued balances, rather than set aside the liened debt and assess 6% interest as the post-judgment rate interest due on the outstanding gas debt.

26.     As a result of litigation with PGW, plaintiffs successfully proved PGW's accounting and billing scheme violated the rules, regulations and laws promulgated under the Pennsylvania Public Utility Code and was ordered by the PUC Commission to cease and desist its unlawful practices. Notwithstanding, the Commission's findings, the PUC does not have the authority to order PGW to refund monies to plaintiffs for sums over-

---

[2] This commission has at least initial jurisdiction, if not exclusive jurisdiction to determine matters involving, *inter alia*, rates, certifications, service, facilities, safety, extensions, and transfer of utility property. The case of *Borough of Lansdale v Philadelphia Electric Co.* (1961) 403 Pa 647, 39 PUR3d 474, 170 A2d 565, discusses those areas of utility matters over which this commission has been granted jurisdiction. Transformation of the indebtedness resulting from the unpaid utility bill into a municipal lien, whether by operation of law, or by the volitional act of the City of Philadelphia as creditor of the utility patron, is an act that results in the preemption of this agency's ability to exercise any degree of authority or jurisdiction over its collection. *See, e.g., Tina L. Francis-Young v. Philadelphia Gas Works,* Docket No. C-2008-2029672 (Initial Decision issued October 28, 2008) at 4 (*distinguishing Gasparro v. Pa. PUC*, 814 A.2d 1282 (Pa. Cmwlth. 2003).

8

collected, over-charged interests/penalties resulting from sums filed a liened debts.[3] (A true and correct copy of the Commission's order for some of the plaintiffs is attached hereto as Exhibit 3).

27.     Plaintiffs now come before This Honorable Court and assert claims against Defendants to recover monetary damages in the form of compensatory and punitive damages, attorney's fees and costs, and whatever additional relief the Court may so award.

## II.     JURISDICTION AND VENUE

28.     This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

29.     Venue exists in this District under 28 U.S.C. § 1391(b)(2) in that all of the events or omissions giving rise to the claims occurred in this District, and the properties against which the liens and excess interest, penalties and finance charges that are the subject matter of this action were imposed, are situated within this District.

## III.     PARTIES

30.     Plaintiffs, ("Colonial Garden Realty Co., LP; Elrae Garden Realty Co., LP; Fairmount Garden Realty Co., LP; Fern Rock Garden Realty Co., LP; Marchwood Realty Co., LP; Marshall Square Realty Co., LP; Oak Lane Garden Realty Co., LP and Simon

---

[3] *Bell v. Phila. Warick Co.*, 355 Pa. at 644, 50 A.2d at 688, "where a plaintiff sues for moneys alleged to be due under a contract, or in trespass for damages, the court is not without jurisdiction over the subject-matter of the suit merely because the action of some other tribunal may be necessary to fix the amount due as a condition precedent to plaintiff's right of recovery.... whatever the function of the Public Utility Commission to determine the reasonable and just amount of defendant's commissions that body cannot give relief to plaintiff by awarding him a judgment. ...The Public Utility Commission has no jurisdiction to entertain a proceeding by a public utility to recover its charges. If plaintiff is entitled to recovery in its present action it is for the Court of Common Pleas to say so..." (emphasis added).

9

Garden Realty Co., LP", respectively) are owners and lessors of multi-family residential apartment rental complexes whose day to day operations and care of the complexes are managed by their agent, SBG Management Services, Inc., (hereinafter referred to as "SBG" whose name is interchangeable with Plaintiffs). The properties are located in the City of Philadelphia and receive gas service in various forms, ie, heating and/or cooking, from the City owned public utility, Philadelphia Gas Works, hereinafter referred to as "PGW"). Plaintiffs' accounts are billed at the GS (general services) rate and for PGW's purposes are deemed commercial service accounts.

31.    Plaintiffs are citizens and residents of the Commonwealth of Pennsylvania. SBG Management Services, Inc. is the authorized property manager and agent for each of the Plaintiff properties identified herein. SBG Management Services, Inc. maintains a registered business address at P.O. Box 549, Abington, Pennsylvania, 19001.

32.    As the agent for plaintiffs, SBG is authorized to engage in certain activities and responsibilities including, but not limited to, 1) serving as the property manager; 2) receiving, reviewing and paying bills, charges and expenses; and 3) managing the daily operations of the property. SBG's responsibilities as agent for the Plaintiff properties include reviewing and paying PGW gas bills.

33.    Gas services at plaintiffs' subject properties are supplied by the City owned PGW, where in some instances plaintiffs are solely responsible for providing heating to tenants and, also, where in certain buildings, tenants are responsible for paying for their own gas usage.

34.    Plaintiff, Colonial Gardens is located at 5425-7 Wayne Avenue Philadelphia, PA 19144. SBG acts as an authorized agent for plaintiff and manages the

10

daily operations of the property which is comprised of 70 multifamily residential rental units. Plaintiffs supply tenants with cooking gas only at this property. Colonial Gardens is responsible for one gas account, (Account number 6128000245) with PGW, and like Simon Garden, has three different SA's and three meters billed under the umbrella of one account number. The SA's for Account number 6128000245 are as follows: SA # 1375369694 associated with meter # 1987516; SA # 1895894961 associated with meter #2115477, and SA # 4018739567 associated with meter # 2115477.

35.     Plaintiff, Elrae Gardens is located at 3608 – 3610 Spring Garden Street, 4012 - 4028 Baring Street, 4027 Baring Street Philadelphia, PA 19104. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 59 multifamily residential rental units. Plaintiff supplied gas to common areas, dryers, however, tenants are responsible for their own gas accounts which are individually metered. The PGW account numbers at issue are as follows: #s: 227745786; 294731407; 405781694; 608367105; and 525370204. Each account is associated with sub-accounts (SA's) and meter numbers.

36.     There are also unpaid tenant accounts for this property plaintiffs have been made responsible for paying either through having a lien filed against the property or as a result of PGW's submission of a Pay Off Inquiry form when plaintiff's refinanced the property. Plaintiffs had no way to challenge the validity of these debts and was forced to pay the alleged sums due and owing by tenants in order to refinance mortgages. PGW's policy is not to disclose the customer name, the time period for which the debt accumulated or account numbers to Landlords who are ultimately responsible for tenant debt. (True and

11

correct copies of some plaintifffs' sample Pay-Off Inquiry Forms are attached hereto as Exhibit 4).

37.     Plaintiff, Fairmount Manor is located at 606 N. Marshall Street, 615 N. 7th Street, 620 N. Marshall Street, 625 N. 7th Street, 627 N. Marshall Street, 628 N. Marshall Street, 634 N. 6th Street, 639 N. 7th Street, 640 N. Marshall Street, 641 N. Marshall Street, 650 Fairmount Avenue, and 700 N. Marshall Street Philadelphia, PA 19123. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 110 multifamily residential rental units. Plaintiff is responsible for gas heat in the common areas, however, tenants are responsible for their own gas accounts which are individually metered.     The PGW account numbers at issue are as follows: #s 025088422; 075710860; 089533358; 156030558; 215659749; 333870431; 355139832; 612167092; 664719425; 677180766; 736586029; 973122001; and 376578649. Each account is associated with sub-accounts (SA's) and meter numbers.

38.     Upon information and belief and after reasonable investigation, there are unpaid tenant accounts for this property that plaintiffs have been made responsible for paying either through having a lien filed against the property or as a result of PGW's submission of a Pay Off Inquiry form when plaintiff's refinanced the property. Plaintiffs had no way to challenge the validity of these debts and was forced to pay the alleged sums due and owing by tenants in order to refinance mortgages. PGW's policy is not to disclose the customer name, the time period for which the debt accumulated or account numbers to Landlords who are ultimately responsible for tenant debt.

39.     Plaintiff, Fern Rock Gardens is located at 910 W. Godfrey Avenue and 900 – 938 W. Godfrey Avenue Philadelphia, PA 19141. SBG acts as an authorized agent for

12

plaintiff and manages the daily operations of the property which is comprised of 44 multifamily residential rental units. Plaintiff provides gas for heating and cooking to tenants and the building. The PGW account numbers at issue are as follows: #s 023444792; 253720512; 719354604. Each account is associated with sub-accounts (SA's) and meter numbers.

40.     Plaintiff, Marchwood Realty is located at 5515 Wissahickon Avenue Philadelphia, PA 19144. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 80 multifamily residential rental units. Plaintiff is responsible for gas heat in the common areas, however, tenants are responsible for their own gas accounts which are individually metered. The PGW account numbers at issue are as follows: #s 9125007651; 5128000237. Each account is associated with sub-accounts (SA's) and meter numbers.

41.     Plaintiff, Marshall Square is located at 844 N. 6th Street and 845 N. 7th Street Philadelphia, PA 19123. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 44 multifamily residential rental units. Plaintiff provides gas for heating and cooking to tenants and the building. The PGW account numbers at issue are as follows: #s 323900622; 373007503. Each account is associated with sub-accounts (SA's) and meter numbers.

42.     Plaintiff, Oak Lane Realty is located at 1623 – 25 Chelten Avenue Philadelphia, PA 19126. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 62 multifamily residential rental units. Plaintiff provides gas for heating and cooking to tenants and the building. The PGW

13

account numbers at issue are as follows: #s 101551535; 981038702. Each account is associated with sub-accounts (SA's) and meter numbers.

43.     Plaintiff, Simon Gardens is located at 6731 Musgrave Street and 6732 Chew Avenue Philadelphia, PA 19119. SBG acts as an authorized agent for plaintiff and manages the daily operations of the property which is comprised of 72 multifamily residential rental units.  Plaintiff provides gas for heating and cooking to tenants and the building.  Simon Garden is responsible for one gas account (Account number 539547187) with PGW, however, the account has three different SA's, ("Service Agreements"), (SA# 11623325601 associated with meter #1944659); (SA # 4395848077 associated with meter # 2035836); and (SA # 8569221065 associated with meter # 2035831). The three separate meters and SA's are billed under the one account number.

44.     Defendant, the City of Philadelphia is a municipal subdivision of the Commonwealth of Pennsylvania. Under Pennsylvania law, it is the only city and county "of the first class." It will be referred to hereafter as "the City" or "Defendant."

45.     In this Complaint reference is made to an entity known as "Philadelphia Gas Works," or "PGW." PGW is a municipal utility that is wholly owned by the City of Philadelphia.   PGW consists only of the real and personal assets that are used to manufacture and deliver natural gas to entities within the city's borders. However, PGW is a non-jural entity that can neither sue nor be sued and, as a result, the actions of PGW are the actions of the City of Philadelphia. PGW is a "city natural gas operation" pursuant to Section 2212 of the Code, 66 Pa. C.S. § 2212, that provides natural gas distribution utility service to plaintiffs. *See, generally,* Natural Gas Choice and Competition Act, 66 Pa. C.S. §§ 2201-2202 (NGCCA).

14

46.     The City, acting as PGW, acts under color of state law for purposes of 28

U.S.C. § 1983; its actions constitute state action subject to the constraints of the Due

Process Clause of the Fourteenth Amendment.

## IV.     FACTUAL ALLEGATIONS

**A.      Common Claims of the Plaintiffs – 1) Wrongful Collection of Late Fees, Interest and Finance Charges; Overpayment of Post-judgment Interest for Liened Gas Debt; 2) Improper Re-ordering/Re-sequencing of Payments to Maximize Company Revenues in Excess of the Approved Tariff Rate; 3) PGW Passively, Intentionally, Withheld Material Information From Plaintiffs.**

> **1.      PGW Wrongfully collected late fees, interest and finance charges on outstanding gas debt and gas debt filed as a municipal claim lien under the MTCLL.**

47.     All plaintiffs have received gas service from the City owned gas service

utility, PGW, at their rental complexes since the late 1990's and early 2000's.

48.     Since the early 2000s, Plaintiffs engaged PGW staff and personnel in

numerous attempts to obtain explanations and information on its gas accounts regarding

high bill disputes, billing accuracy, application of payments, termination and shut off

notices, accountings for gas debts for lien judgments paid at settlement through refinancing

and disclosure on information for debts filed as liens against the properties, which forced

foreclosure actions and constructive defaults on certain properties.

49.     Prior to filing formal complaints with the PUC, plaintiffs' engaged in

numerous communications, conversations and negotiations, and entered into agreements

with high level PGW management personnel, facilitated by the parties' legal counsel, in an

attempt to get a reasonable, logical explanations for their high gas bills, PGW's accounting

methodology and payment posting scheme and wanted to work with PGW towards

resolution for their billing disputes with PGW.

50.     From 2003 through 2009, plaintiffs corresponded and met with PGW's John Dunn, the Director of the Commercial Resource Department, who throughout the years took action to stave off shut-offs notices and other collection activities while he purported to be attempting to investigate and resolve plaintiffs' complaints and disputes. Dunn retired from PGW in 20009. From 2009 until 2012, Dunn's investigations continued under the direction of Dunn's successor, Ralph T. Savage, also the Director of the Commercial Resource Department.

51.     While plaintiffs have been questioning PGW's billing and collection practices since at least 2001, from 2004 until 2015, plaintiffs requested numerous explanations from PGW as to a financial breakdown of their accounts regarding their payments applied to gas usage charges, credits, penalties, late payment charges, penalties, fees and verification of the source sums alleged due resulting from payoff inquiries to clear title in the case of refinancing the properties and the sums allegedly due to PGW based upon lien judgments filed with the court that encumbered the properties.

52.     From 2006 through 2012, PGW gave plaintiffs and SBG, as their agent, continued assurances they would investigate and provide the information requested about their high bills, sums demanded along with their source, and the parties entered into an agreement to stop collection actions pending the resolution of the investigation.

53.     By letter dated April 11, 2005, SBG rejected the explanation provided by PGW with regard to the March 5, 2005 bill and requested a breakdown of charges on a monthly basis. Despite making large payments towards its bills, the balances rarely zeroed out and balances were carried over that were perpetually subject to penalties, interest and finance charges. (See sample property billing statements attached hereto).

16

54.     Plaintiffs repeatedly questioned PGW's billing accuracy; 2) disputed the veracity of their account balances; and, 3) disputed the calculation of interest and penalties assessed.

55.     For many years, despite plaintiffs' inquiries, requests for information from and in communications with PGW management and legal staff, PGW refused to follow through or respond to plaintiffs' inquiries regarding their billing disputes and continues to fail to act and deal in good faith to resolve consumer complaints in accordance with the Pennsylvania Public Utility Commissions' promulgated rules and regulations codified at 52 Pa. Code §56.1 et seq.

56.     Rather than disclose its payment posting scheme and accounting methodology to plaintiffs in order to resolve plaintiffs' disputes, PGW allows large unpaid gas debts by tenants, gas customers and plaintiffs to accrue subject to late fee penalties, interest and finance charges on its customer accounts, rather than resolve the plaintiffs' inquiries and advise customers to file formal complaints thus failing to mitigate parties' damages, in violation of 52 Pa.Code §56.142.

57.     If the available administrative remedies are complete and adequate to make the complainant whole, then the Pennsylvania Public Utility Commission has exclusive jurisdiction over the controversy and there is no recourse to the courts outside of the normal channels of appeal to the Commonwealth Court. However, where the administrative remedies are not adequate and complete, the PUC's jurisdiction is not exclusive and an action for damages may be brought in a court of Common Pleas based upon the Commission's initial determination of the matters within its realm of expertise. *See, Faye Payne v. Philadelphia Gas Works*, Docket No. C-2011-2247124 (Order entered

17

February 16, 2012) ("the Commission lacks the authority to order the City to remove *or reduce* a lien on the complainant's property" (emphasis added)); *Griffin v. Philadelphia Gas Works*, Docket No. C-2011-2251780 (Order entered November 14, 2011).

58.    PGW incorrectly collects payments on accounts from customers and plaintiffs in error and in violation of 66 Pa.C.S. §1303 which states in part, "[n]o public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corporation, or municipal corporation a greater or less rate for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto.

59.    PGW's billing and collection practices wrongfully collect finance charges by way of over-collecting interest penalties and late fees by re-ordering payment postings in a way that compounds the legal interest rate for collections from 18% simple interest to 19.562% interest compounded, which indirectly increases company revenue and rates in excess of the approved tariff which violates PGW's Tariff, the Public Utility Code, Title 66 Pa.C.S. Ch.§§1303, 1304, 1309, 1502, the Commissions regulations at 52 Pa.Code §§56.22, 56.23, 56.141. 56.152 62.74 and 62.75(c)(10).

60.    PGW's accounting scheme and practice is not disclosed to the public is misleading and breaches the implied duty to deal honestly, fairly, in good faith as promulgated in 52 Pa.Code §56.1.

61.    PGW maintains a payment posting hierarchy that re-sequences and reorders gas payments to customer's/plaintiffs account balances such that the interest rate collected is compounded and PGW does not explain or disclose its accounting schemes or payment posting methodology to gas customers/plaintiffs either through its printed billing and

18

account statements, published Tariff, nor communications with its customer service representatives.

62.      Section 56.24 of the Regulations, 52 Pa. Code §56.24, provides: "[I]n the absence of written instructions, a disputed bill or a payment agreement, **payments received by a public utility which are insufficient to pay a balance due both for prior service and for service billed during the current billing period shall first be applied to the balance due for prior service**. Pursuant to the Regulations' directives, late payment charges, along with commodity charges, distribution charges, customer service charges, reconnection fees, gas cost adjustment charges, interstate transition cost surcharges, taxes and security deposits are all basic service charges.

63.      The clear and unambiguous language in the Regulation is violated to the extent a partial payment does not reduce interest bearing charges billed and accumulated under a past due bill, *i.e.* August 2011 bill, before reducing more current charges for distribution service, *i.e.* November, 2011, *i.e.*, late payment charges are paid for current bill leaving as an outstanding balance, distribution service charges for the prior bill.

64.      In the case of a partial payment on a past due bill, the entirety of the "balance due" for prior service for which the utility has issued a bill and of which the ratepayer has received notice, should be addressed simultaneously. In this light, the text clearly obligates a utility to apply a payment insufficient to pay a balance due both for prior service and service billed during a current period ". . . shall first be applied to the balance due for prior service."[4] *See* 52 Pa.Code §56.24.

---

[4] **§ 56.24. Application of partial payments among several bills for public utility service.** In the absence of written instructions, a disputed bill or a payment agreement, payments received by a public utility which are insufficient to pay

19

65.     PGW's application of partial payments out of order so that the most recent late payment charges are paid before the gas charges due for prior service constitutes a failure to provide adequate and reasonable service in accordance with 66 Pa.C.S.A. § 1501, as well as a violation of 52 Pa.Code §§56.22, 56.23 and 56.24.  In addition, PGW's improper inclusion of liened amounts in the outstanding balance under PGW's tariff also constitutes a failure to provide adequate and reasonable service in accordance with 66 Pa.C.S.A. §1501.

66.     PGW's pricing scheme to re-sequence payments serves as an additional indirect revenue stream that is neither contemplated, nor disclosed to patrons in the approved Tariff and thus violates Pennsylvania state law, various chapters of the 66 PaC.S.§§1303, 1304 and 1502 and the Commissions regulations at 52 Pa.Code §56.1 et al, §56.22 and 56.24.

67.     As a result of PGW's accounting and collections ruse designed to indirectly increase its authorized Tariff rate in violation of the public utility code and the City's lax procedures used in coordination with PGW's  unfettered ability to docket municipal claims as liens without review, plaintiffs were subjected to substantial damages because their accumulated interest bearing gas account balances were inclusive of statutory late fees, and then once again subject to interest and finance charges for non-interest bearing debt.

**2.     Improper Re-ordering/Re-sequencing of Payments to Maximize Company Revenues in Excess of the Approved Tariff Rate.**

---

a balance due both for prior service and for service billed during the current billing period shall first be applied to the balance due for prior service.

20

**a. *A lien is a judgment and post-judgment interest is limited to accrue at 6% per annum pursuant 42 Pa.C.S. §8101.***

68.     PGW, in the ordinary course of business, exercises its right as a municipally-owned utility to cause the City of Philadelphia to file a municipal lien for the collection of unpaid gas debt.

69.     If the liened debts remain unpaid, PGW's policy and practice is to continue to charge finance charges (late payment fees) on the outstanding balance of the account at a rate of 1.5% monthly, as authorized by its PUC tariff, until the debt is satisfied.  It is PGW's long standing practice to assess late payment charges at 1.5% per month on any outstanding balance on an active account, even if the said debt is the subject of a municipal lien filed with the Court of Common Pleas.

70.     Pa.R.C.P. Rule 3023. Judgment. Lien. Duration. (a)Except as provided by subdivision (b), a judgment when entered in the judgment index shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered.  In plaintiffs' cases, PGW charges the compounded interest rate of 18% for finance charges to amounts liened, until satisfied.

71.     Section 8142(e) of the Judicial Code, 42 Pa.C.S. §8142(e), requires the prothonotary to ''note on the dockets in such office where each verdict, judgment, order, instrument or writ creating a lien against real property is entered, the time it was recorded, rendered, left for filing, or issued.''  The rule presumes a channel of communication between the court and prothonotary so that the prothonotary may ''immediately'' docket a judgment entered by the court.

72.     Pursuant to 42 Pa.C.S.§8101, Interest on Judgments. The rule states "[e]xcept as otherwise provided by another statute, a judgment for the specific sum of

21

money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment....41 Pa.C.S. §201 establishes that the legal interest rate in Pennsylvania is 6%", which comports to the comments and notes of decisions in 52 Pa.Code §56.22. *See* Equitable Gas v. Wade, 812 A.2d 715 (Pa. Super. 2002).

73.    A lien is a judgment. A judgment creates an immediate lien against real property. A judgment shall bear the interest rate of 6% per annum.  Once a debt becomes a lien, the creditor has moved from the jurisdiction of the PUC Commission and entered into the court system.

74.    Any "election" of available remedies that PGW and the City of Philadelphia may pursue to recover on the debt for an unpaid utility bill is an election brought about by operation of law and the statutory procedures of the MCTLL.  These are matters over which the PUC lacks jurisdiction. *See N. Coventry Twp. v. Tripodi*, 64 A.3d 1128 (Pa. Cmwlth. 2013) (citations omitted).  The recording of the lien is, in fact, an act and a remedy in the sense that it is a statutory, civil collection process that invokes the jurisdiction of the Courts concerning the debt.  This is to the exclusion of the PUC Commission's review of gas debt subject to a municipal lien.

75.    A lien may be reviewed by a party filing a writ of scire facias, a judicial proceeding The writ scire facias *is not a mandatory proceeding* as to the imposition of the lien. It is only the procedural due process prerequisite necessary to effect a judicial sale. The proceeding is nothing more than a novation and a judicial reinforcement of the existence of the municipal claim. The writ proceeding is not a meaningful challenge to the underlying basis of the debt and PGW knows that. (*See* Pentlong Corporation v. GLS Capital, Inc., 573 Pa. 34, 46-47 820 A.2d 1240, 2003 Pa. LEXIS 383). (True and

22

correct copies of samples of the PGW's Writs of Scire Facias filings against plaintiffs are attached hereto as Exhibit 5).

76. Notwithstanding that PGW (through the City of Philadelphia) has a legal right to pursue collection on a debt for past due utility service under actions *in rem* and *in personam*, the legal effect of PGW's practice to docket the municipal lien, with or without notice, is to remove the transparent examination of the underlying indebtedness for the unpaid utility bill from the PUC's jurisdiction and purview.

77. The PUC does not have jurisdiction over any aspect of the underlying debt once it has been converted into a municipal lien. *Cornelia Strowder v. Philadelphia Gas Works*, Docket No. C-20028036 (Order entered December 30, 2002). Thus, there is no relief which the Commission has authority to provide to a successful litigant, either ratepayer (debtor) or utility (creditor), based on a dispute regarding the lien. An administrative agency does not have exclusive jurisdiction unless it has the power to award relief that will make a successful litigant whole. *See,* Pettko v. Pennsylvania American Water Co., 39 A.3d 473, 479, 480 – 484, 2012 Pa. Commw. LEXIS 26.

78. At such time as PGW's municipal claim becomes a municipal lien, this is a voluntary election by the City of Philadelphia that has legal consequences. Transformation of the indebtedness resulting from the unpaid utility bill into a municipal lien, whether by operation of law, or by the volitional act of the City of Philadelphia as creditor of the utility patron, is an act that results in the preemption of the PUC's ability to exercise any degree of authority or jurisdiction over its collection. *See, e.g., Tina L. Francis-Young v. Philadelphia Gas Works*, Docket No. C-2008-2029672.

23

79.    PGW fails to apply the 6% post judgment simple interest rate, as approved under Pennsylvania statutory law, to amounts filed as liens and docketed in the county judgment index; PGW's actions in this regard violate 52 Pa.Code §56. 22 and 42 Pa.C.S.§8101, and violates the approved Tariff and filed rate doctrine, and other provisions of Title 66 of the Public Utility Code, Chapters 13, 14 and 15.

80.    PGW's imposes the unjust rate of 18% compounded interest (19.562%) per annum to post judgment debt.

81.    PGW maintains a continuing, pattern and practice of overcharging Complainants for late fees, finance charges and interest penalties in excess of 18% simple interest rate per annum leading to collection of compounded rate of at least 19.562 % interest per annum on unpaid balances.

82.    Moreover, PGW's accounting scheme seeks to maximize company profits in its collection of finance charges and late fee penalties by commingling post-judgment debt with current interest bearing charges, whereby post judgment debt accrues finance charges at the same rate as the pre-judgment balance. PGW's practice of ignoring Pennsylvania legislative statutes, rules and regulations creates a discriminatory, unauthorized increase in its approved tariff rate and service class for ratepayers.

83.    PGW compounds and collects finance charges, late payment charges, penalties in excess of the approved 18% simple interest rate approved in the regulatory imposed tariff and wrongfully charges the pre-judgment interest rate on post-judgment debt in excess of the statutorily prescribed rate of 6%.

84.    PGW maintains a continuing, pattern and practice of overcharging Complainants for late fees, finance charges and interest penalties in excess of 18% simple

24

interest rate per annum leading to collection of compounded rate of 19.562 % interest per annum on unpaid balances.

85.     PGW fails to apply the statutorily authorized 6% post judgment simple interest rate to outstanding gas debt filed as liens and docketed in the county judgment index, both actions of which violate 52 Pa.Code §56. 22 and 42 Pa.C.S.§8101, and violates the approved Tariff and filed rate doctrine, and other provisions of Title 66 of the Public Utility Code, Chps. 13 and 15.

86.     PGW has admitted it does not apply the statutory post-judgment interest of 6% rate per annum to amounts filed as lien judgments.  (A true and correct copy of the sworn direct testimony of PGW witnesses, Diane Rizzo and Ralph T. Savage and SBG witness, Kathy Downs Treadwell is attached hereto as Exhibit 6).

87.     PGW has admitted it commingles lien debt with active account balances and applies the pre-judgment interest rate of 18% to the post-judgment debt.

88.     Assuring the veracity of the calculations contained in the stated account balance on liened debt submitted for docketing is essential to customers who face property deprivation as a result of liens.

89.     PGW, in conjunction with the City of Philadelphia, use the Municipal Tax Claims and Lien Law Act ("MTCLL" codified at 53 Pa.C.S. §7101 et seq.) as their shield to charge and collect prejudgment interest at the compounded rate of 19.562% to post-judgment liened debt. Such action constitutes a penalty, which is a violation of sections of the Public Utility Code and tariff at 66 Pa.C.S. §1303 (regarding just and reasonable rates) and §1501 (relating to good service).

90.     The debt represented by the municipal lien, once perfected, cannot form the basis for just and reasonable rates pursuant to a Commission-approved tariff. Consequently, inclusion of that same indebtedness in the determination of a rate (late payment charge) authorized by a Pennsylvania Utility Commission-approved tariff is contrary to law.

91.     Through this practice PGW, and by extension the City, maintains two separate claims (*in rem and in personam*) on the same amount of outstanding debt: one claim under the PGW's Tariff and Commission regulation at 52 Pa. Code § 56.22 (reflected in its imposition of 18% interests rate of late payment charges on the outstanding balance or debt), and a second claim under the Municipal Lien Act in the form of a lien, an *in rem* judgment against the plaintiffs' property.

92.     PGW's pernicious accounting/collections scheme deprives plaintiffs of their property interests in violation of their due process rights.

### 3.     PGW Passively, Intentionally, Withheld Material Information From Plaintiffs.

93.     After reasonable investigation and upon information and belief, PGW's practice of charging and collecting pre-judgment compounded interest for lien judgments violates Pennsylvania state law, regulatory rules, policies and procedures.

94.     Upon information and belief and after reasonable investigation, PGW affirmatively misleads and misrepresents plaintiffs and gas customers by not adhering to acceptable billing and collection practices that comply with UCC practices under federal and state law.

26

95.     Upon information and belief, PGW uses unfair, unjust and untimely billing practices to collect unpaid debts from the wrong party, ie, landlords who are penalized and held responsible payment of tenant debts.

96.     PGW has maintained its financial accounting, billing and collections scheme since the inception of plaintiffs' accounts and does not affirmatively publish, disclose or inform gas customers like plaintiffs of its methodology for posting payments and applying late fee and interest charges without litigation.

97.     The PGW methodology for, both, the allocation of partial payments, and the inclusion of liened amounts in deriving late payment charges was not a transparent application of its tariff. This was a business decision by the Company which resulted in charges on the bill that could not be ascertained by a patron, or Complainants, upon reasonable inquiry. *See* 52 Pa. Code §62.71.

98.     After reasonable investigation and upon information and belief, PGW has affirmatively misled, misrepresented and omitted disclosing substantially material facts regarding PGW's billing and collection practices such that plaintiffs' reliance on the technical information supplied by PGW concealed the fraudulent billing and collection practices, the depth of which was not discovered by plaintiffs until plaintiffs initiated an action before the Public Utility Commission, which has caused plaintiffs undue delay and substantial injury.

99.     PGW's specious accounting, billing, and collections mechanisms, policies and practices along with their failure to disclose or timely inform plaintiffs of their methodology of how PGW applied and posted payments to plaintiffs' accounts requires an equitable remedy.

27

100. PGW's continued pattern, practice and conduct has violated Title 66, Ch. 1303, 1304, 1309; 1502 of the Pennsylvania Public Utility Code, the Commissions Regulations, promulgated at 52 Pa.Code §§56.1, 56.15, 56.22, 56.23, 56.24, 56.99, 56.140, 56.141, 56.151, 56.152, 62.74 and 62.75(c)(10); and well-settled Pennsylvania law codified at 42 Pa.C.S §8101, and Pa.R.C.P Rule 3023.

101. From 2003 - 2011, PGW's managerial employees and legal counsel were aware and actively engaged with SBG to satisfactorily resolve disputes, made representations and entered into verbal agreements with plaintiffs to work with them to provide SBG with the necessary answers, information and explanations regarding their billing, collection and account issues, and yet never disclosed material information that would allow plaintiffs to understand PGW's accounting, billing and collections scheme as it pertained liened debt or late fees/penalties assessed on plaintiffs accounts.

**4. The City and PGW denied Plaintiffs due process by failing to give notice of municipal claims filed as liens and improperly included the debts of others without proper notice.**

102. In accordance with its customs and ordinary business practices as set forth above, the City filed these liens by docketing them as *judgments* on "gas service claims" in the Court of Common Pleas. No complaint or petition was filed, no document of any kind was served on SBG.

103. On or about May 31, 2012, after most of the named plaintiffs herein had filed formal complaints with the PUC against PGW, the City filed writs of scire facias for all of the named plaintiffs for municipal gas claim liens filed by PGW. Plaintiffs engaged counsel to file affidavits of defense for each of writs filed.

28

104.    The arbitrary and capricious imposition of these liens serves to cloud title to the properties affecting SBG's ability to sell or refinance the properties. Further, and as a result of the liens, Plaintiffs have been prevented from pursuing other real estate development and/or investment deals at reasonable rates of interest because they have had to allocate resources to account for these liens.

105.    As a result of encountering the arbitrary and capricious practices of the City, SBG did not understand the true nature of the lien-judgment scheme employed by the City until after SBG was required to invest hundreds of thousands of dollars in fees and costs investigating the nature of the liens.

106.    Plaintiffs' first formal notice of the City's practice was on or about 2011 when it received a payoff inquiry notice when plaintiffs tried to refinance certain property named herein. PGW did not explain the origins of its claims and insisted the debt was due. Plaintiffs had no choice but to pay off the debt in order to refinance the property.

107.    When a Notice was sent, it was a form notice which provides no information about the underlying claim other the amount said to be owed; it does not disclose the identity of the tenant, the period of gas service, nor the date when the delinquency arose. The notice also provides no information about any opportunity to contest the imposition of the lien. It merely discloses that the lien "will be marked satisfied only when all prior liens and this lien have been paid in full" (emphasis in original), and invites the recipient of the notice to call the Credit and Collections Department of PGW for additional information.

108.    As with the other form notices used by PGW, this notice provided no further information about the underlying customer account or how, if at all, Plaintiffs could contest the imposition of the lien. It offered only one option for the recipient: paying the lien (along

29

with "the full amount of prior liens on the Property") by contacting PGW's Credit and Collection Department.

109. Additional notices regarding identical liens were also received and are attached hereto.

110. As a result of the liens, Plaintiffs demanded PGW representatives to justify these claims. In response, only after years of empty claims and promises did PGW refer plaintiffs to the Pennsylvania Public Utilities Commission to air their grievances in May 2012 which was the beginning of years of expensive litigation with PGW.

111. On December 8, 2016, the PUC ruled that it had no jurisdiction to determine the validity of any gas liens filed pursuant to the Municipal Claim and Tax Lien Law (MCTLL). In this ruling, the PUC advised Plaintiffs that they must seek relief through the courts. (See copy of the SBG et al. v. PGW, PUC order dated December 16, 2016 is attached hereto as Exhibit 3).

112. Although not providing property owners like the Plaintiffs any information about the delinquent gas account before a gas lien is imposed, nor offering any means of obtaining that information after the lien is imposed, PGW will provide such information to a property owner seeking to pay off all liens in a sale or refinancing transaction. Accordingly, plaintiffs sought an accounting of the lien(s) for the properties named herein.

113. In 2014, Plaintiffs received shut-off notices from PGW which demanded in excess of $200,000 for gas bills despite the fact that the parties were before the PUC for adjudication of disputed bills and plaintiffs' repeated requests for accountings on plaintiffs' gas accounts went unanswered. Despite having a properly lodged dispute before the PUC, PGW forced plaintiffs to make payment on the disputed and unsubstantiated debts, which

30

included amounts liened judgments filed with the court, in order to maintain service to its buildings and tenants in violation of 52 Pa. Code§ 56.141(2). (True and correct copies of samples of the Shut-Off notices are are attached hereto as Exhibit 7).

114.    The City filed these liens by docketing them as judgments on "gas service claims" in the Court of Common Pleas. Consistent with its standard practice and procedures, the City filed no complaint or petition, served no documents of any kind on the Plaintiffs and no judicial or other proceedings were ever held or contemplated.

115.    These notices failed to provide them any information about the underlying liens other the amount said to be owed; they provided no disclosure of the identity of the tenant, nor the period of gas service or the date when the delinquency arose; and provided no information about any opportunity to contest the imposition of the lien.

116.    Plaintiffs' experiences are not unique. On the contrary, the City's treatment of the Plaintiffs is consistent with its policies and practices in connection with municipal liens for unpaid gas charges as previously noted by this Honorable Court. Specifically, in an unrelated matter, and in an Order and Opinion dated January 4, 2017, The Honorable Curtis J. Joyner entered an Order enjoining the City from continuing with such lien practices. (True and correct copies of Judge Curtis J. Joyner's January 4, 2017 opinion regarding PGW's liens process is attached hereto as Exhibit 8).

117.    It is well-settled that Pennsylvania municipalities are empowered by the Pennsylvania Municipal Claim and Tax Lien Law ("MCTLL"), 53 P.S. § 7101 et seq., to impose liens on real estate as a collection mechanism for unpaid "municipal claims."

118.    PGW is a "city natural gas distribution operation" within the meaning of the Pennsylvania Public Utility Code, 66 Pa. C. S. § 2212. Since 2004, the Public Utility Code

31

has empowered any "city natural gas distribution operation" to "impose or assess a municipal claim against a property and file as liens of record claims for unpaid natural gas distribution service and other related costs, including natural gas supply," pursuant to the MCTLL. 66 Pa. C. S. § 1414(a).

119.    The MCTLL provides that, with regard to municipal claims generally, an *in rem* lien against a particular property arises in favor of the City upon the mere docketing of the lien in the Court of Common Pleas. 53 P.S. § 7106(b).

120.    The MCTLL contains no provision requiring prior notice or an opportunity to contest the claim before the lien is imposed, and it requires no adjudication or factual determination of any kind before or after the lien is docketed. On the contrary, other than the later docketing of a satisfaction in the event the lien is paid in full, the docketing of the lien itself is the only event that ordinarily appears in the record of a typical lien on a "gas service claim."

121.    With respect to each tenant customer account of PGW, the City is at all times in possession of the actual ownership information of the real property to which natural gas utility service is provided including the owner's identity and address. The City maintains and makes available to the public, in an easily searchable format, ownership information regarding every parcel of real property within the City, including the owner's mailing address. Ownership information is also provided during the process of obtaining a rental license from the City. In addition, for each of its tenant customers, PGW either requires, or reserves the right to request, identification of the landlord as part of the application process.

32

122.    Even though PGW and/or the City has the name and address of the landlord and/or the landlord's agent, a mandatory requirement for initiating a service agreement under its tariff, as a matter of general policy, it does not notify a landlord in the event the landlord's tenant becomes delinquent in payments due to PGW.

123.    Under policies and procedures of the City and PGW that have existed since they were granted, in 2004, the statutory power to lien for any unpaid gas service provided to a property (regardless of who was the PGW customer), the only notice, if any, provided to a landlord prior to the City filing a lien against the landlord's property for unpaid gas charges incurred by a tenant, is a form letter from PGW like the ones sent Plaintiffs. On information and belief, prior to 2012, the City provided no notice of any kind to a property owner before imposing a gas lien on the property.

124.    Prior to imposing a lien on landlord property, the City and PGW do not provide the landlord with the name of the tenant or the time period during which the claim for unpaid gas service arose, nor do they provide a means for obtaining such information or disclose the existence of any procedure for disputing the claim before the lien is imposed.

125.    As a matter of general practice, the City files gas liens in bulk. These bulk filings will routinely include liens against non-customer property owners, in many cases, attributable to closed customer accounts incurred years earlier, when the landlord has no means to get the tenant to pay the bill. In other cases, the liens pertain to current tenant customers who are not identified and who may, in fact, be paying the delinquency.

126.    The City's failure to provide timely notice to landlords like the Plaintiffs means that amounts owed by the tenant customer may be continuing to accrue, while the

33

landlord has no knowledge of the growing delinquency which will ultimately be lodged as a lien against his or her property.

127. The amount ultimately owed in delinquent gas payments can accrue substantially after the delinquency first arises because PGW does not immediately shut off gas service to delinquent customers. On the contrary, PGW routinely allows-and in some cases is required- to continue providing gas service long after a payment delinquency arises. For example, PGW will not shut off gas service to low income residential customers in the winter months. See 66 Pa.C.S.§1406(e). That winter moratorium on service shut off can be extended pursuant to the Low- Income Home Energy Assistance Program. See Section 601.61 of the LIHEAP State Plan for FY2014. Customers with serious medical conditions can prevent terminations year round. See 66 Pa. C.S. § 1406(£); 52 Pa. Code§ 56.111. In addition, a properly lodged dispute with the PUC over a pending termination can also result in a stay of shut off pending the resolution of the dispute. See 52 Pa. Code§ 56.141(2).

128. State law provides for residential customer repayment agreements extending over periods as long as five years. See 66 Pa. C.S. 1405(b). PGW offers customers various repayment options, subsidies, and delinquency forgiveness programs that allow customers to continue to receive gas service despite unpaid bills and on-going arrearages. See 52 Pa. Code. § 56.97(a)(2)(iv). As a consequence of these programs, tenant gas customers can be current on payment agreements while there remains a delinquent balance subject to possible liened debt by the City.

34

129.    As illustrated by the Account Pay-Off Inquiry Forms provided by PGW to Plaintiffs, there is substantial opportunity for errors in determining the actual amount that should be subject to lien. (See attached Exhibit 4).

130.    With regard to both residential and commercial properties, the City provides landlords no meaningful opportunity to investigate and dispute the charges before the lien is imposed. Even at the point in time when the City has decided to impose a lien or already has done so, PGW, as a matter of custom and policy, routinely treats information about those charges as confidential information it cannot share with the landlord and directly refuses requests for such information when made by a landlord. Although landlords can sometimes manage to obtain incomplete information over the telephone about the unpaid accounts, it is not until the landlord actually offers to pay all outstanding liens in full that PGW will provide a written statement to the landlord, itemizing (a) the name of the tenant customer, (b) the period during which the delinquency arose and (c) the amount due on that account. This same information could be provided to landlords earlier, at the time the account first goes delinquent, but PGW has made the deliberate choice not to provide it at that time.

131.    The timing and methods of collection used by PGW to enforce the payment obligations of its customers are subject to regulation by the PUC which has the power, among other things, to fine PGW for improper or negligent collection conduct. However, at the point in time where the lien is typically filed, where the PGW "customer" is no longer receiving service, a landlord has no meaningful access to the dispute resolution procedures of the PUC-and, thus, cannot obtain any relief there with regard to the untimely and inadequate notice the City and PGW provided to them-

35

because of the PUC's position that its power does not extend to the City's practices in liening properties under the MCTLL.

### 5.    PGW's Landlord Cooperation Program

132.    PGW offers landlords of residential properties the opportunity to apply to a program it calls the Landlord Cooperation Program (LCP). If a landlord is accepted into this program, PGW will not lien the property as long as the landlord remains in "cooperative status" as determined by PGW. However, the only notice provided to landlords about this program is *on* PGW's website. There is no notice about the LCP provided to individual landlords other than what appears on the website.

133.    "Cooperation" for purposes of the LCP means little more than providing PGW access to the property in the event the utility wishes to terminate or inspect the premises. PGW could affirmatively seek such "cooperation" from non-participating landlords at the time a tenant delinquency first arises, but chooses not to do so.

134.    Even for landlords who manage to learn about LCP and enroll in the program, PGW retains the sole discretion to assess a landlord's compliance with the terms and conditions of LCP and terminate the landlord from the program. Those terms and conditions expressly state that PGW "will not be required to consider the effect of any such determination on a property owner's real property interests."

135.    PGW refused to allow plaintiffs to enroll in the Landlord Cooperation Program.

136.    For non-residential properties, PGW does not offer landlords the opportunity to participate in LCP. For commercial properties, PGW only offers landlords participation in a program it calls "Commercial Lien Notification." This program, like

LCP, requires the landlord to apply and to maintain "cooperation and compliance" as determined at PGW's sole discretion, without regard to the "property owner's real property interests." However, the only benefit offered to landlords accepted into this program is that PGW "will provide enrolled landlords with 30+ day advance notification that a registered commercial property is subject to and will be liened for unpaid gas usage at the property." This supposed benefit is no more than the above-described inadequate notice provided to all property owners before the lien is filed.

137.   Neither of the "cooperation programs" described above are adequate substitutes for meaningful, effective and timely notice as required under the United States Constitution.

## COUNT I

138.   The above allegations are incorporated by reference.

139.   Plaintiff, Colonial Gardens Realty has suffered in excess of $183,000 in damages resulting from the payment of over-collection of late fees, fees and costs as a result of PGW's violative lien practices and bogus accounting/collection schemes since the inception of its accounts.

140.   Plaintiff, Elrae Garden Realty has suffered in excess of $84,500 in damages due to PGW's violative lien practices and its over-collection of late fees/finance since the inception of its accounts to the present.

141.   Plaintiff, Fairmount Manor Realty has suffered in excess of $183,800 in damages due to PGW's over-collection of assessed late payment charges and its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

142.    Plaintiff, Fern Rock Realty has suffered in excess of $206,800 in damages due to PGW's over-collection of assessed late payment charges, its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

143.    Plaintiff, Marchwood Realty has suffered in excess of $32,000 in damages due to PGW's over-collection of assessed late payment charges, its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

144.    Plaintiff, Marshall Square Realty has suffered in excess of $207,000 in damages due to PGW's over-collection of assessed late payment charges, its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

145.    Plaintiff, Oak Lane Realty has suffered in excess of $29,000 in damages due to PGW's over-collection of assessed late payment charges, its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

146.    Plaintiff, Simon Gardens Realty has suffered in excess of $650,00 in damages due to PGW's over-collection of assessed late payment charges, its violative lien practices and its undisclosed accounting scheme since the inception of its accounts to the present.

147.    Plaintiffs have incurred additional damages related to the costs of lending money for refinancing their property and/or foreclosure actions initiated by the City as a result of PGW's unsubstantiated and illegal charges.

38

## VI.    CLAIM FOR RELIEF

148.    The above allegations are incorporated by reference.

149.    The municipal liens encumbering the real property of Plaintiffs represent deprivations of property interests sufficient to trigger due process protections. As a general matter, these liens have the effect of clouding title; impairing the ability of Plaintiffs to sell or otherwise alienate their properties; tainting credit scores; reducing the chance of obtaining credit; and can even place an existing mortgage in technical default where there is an insecurity clause.

150.    A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

151.    For the purpose of holding landlords responsible for their tenants' unpaid gas bills, the meaningful time for providing notice of a tenant's failure to pay for gas service received would be when the tenant is still in the property and the landlord has some ability to compel the tenant to pay the bill or to participate, assist the tenant, and/or intervene in challenging the accuracy of the underlying bills. In contrast to the City's treatment of unpaid water bills-where, by ordinance, the City's Water Department is required to notify the property owner when a delinquency arises on a tenant-customer's water bill-such timely notice does not occur with regard to the City's handling of unpaid, tenant gas bills.

152.    Defendant knows or could easily discover the identity of property owners potentially subject to gas liens and could easily and inexpensively provide adequate, accurate and timely notice like it does with regard to unpaid tenant water bills.

153.    The untimeliness of the notice has the practical effect of reducing the possibility that any erroneous or improper payment demands will be brought to light and

disputed. The PUC has a complaint process that provides for adjudicative review of PGW's collection demands and activities. By delaying notice to property owners until a point in time where there is likely to be no active tenant customer and where the non-customer owner cannot obtain PUC review, Defendant is effectively undermining the possibility that legitimate disputes with PGW can be asserted and decided, and factual errors corrected, before imposition of a lien.

154.    Besides being untimely, the substance of the notice Defendant provides to property owners is also constitutionally inadequate because it omits critical information the property owner would need to investigate and dispute the claim before the lien is imposed. Such information would include the name of the tenant, the period during which the gas service was allegedly not paid, and the record of meter readings and tenant-customer payments. Nor does Defendant provide any means for obtaining such information, other than a phone number for PGW, which, if called, will at best yield incomplete information. In fact, when contacted by a landlord about a lien, PGW representatives, upon information and belief, are instructed to inform the inquiring landlord that the requested information is confidential customer information that cannot be disclosed.

155.    The substance of the notice is also constitutionally inadequate because it fails to provide any information about how, procedurally, the property owner can dispute the facts underlying the lien. This deficiency is made worse by PGW's practice of encouraging property owners to take their disputes to the PUC where, PGW knows, the disputes will be dismissed for lack of jurisdiction.

156.    Besides the constitutional inadequacy of the timing and substance of the notice provided to property owners prior to gas claims against their current or former

40

tenants being filed as liens against their properties, the statutory procedures are themselves constitutionally deficient in that they provide for no hearing or fact-finding prior to the imposition of the lien.

157.    The imposition of a lien against the properties of owners who were not PGW's billed customers, without notice and opportunity to be heard, serves no legitimate governmental purpose. It does not serve to encourage and enforce payment of utility bills by the actual users of the service provided by Defendant. As stated above, the City's policies, practices and procedures regarding gas liens are actually counterproductive to that interest in that, by not notifying the landlord about the payment delinquency, PGW is effectively abandoning the opportunity to secure the landlord's aid to get the tenant to pay the bill.

158.    The constitutional right of Due Process applies to all property owners within the City of Philadelphia. The City's power to lien properties for unpaid gas bills is subject to and limited by this constitutional right. The City's power to impose late fees and finance charges to PGW gas debt is limited to 18% simple interest per annum and 6% per annum for liened PGW debt.

159.    For all of the aforementioned reasons, Plaintiffs are persons entitled to relief pursuant to 42 U.S.C. § 1983 in that, under color of statute. ordinance, regulation custom, or usage the defendant has deprived them of rights, secured by the Constitution of the United States; defendant's actions deprived and threatens to deprive plaintiffs of property without due process of law in violation of the Fourteenth Amendment to wit the right of Due Process guaranteed by the 14th Amendment.

---

41

WHEREFORE Plaintiffs request the following relief:

1.      This honorable court order a refund of $2,000,000 representing liens and interest charges overpaid to PGW to date by Plaintiffs which were improperly calculated and assessed;

2.      Release of any pending liens improperly calculated and assessed to date;

3.      An award in the amount of $5,000,000 representing lost investment and business opportunities suffered by Plaintiffs as a result of the City's improper lien practice;

4.      An award of attorney's fees, expenses and costs pursuant to 42 U.S.C. § 1988 including but not limited to those sums incurred by Plaintiffs investigating the nature of the claims and improper practices of the City;

5.      Punitive damages in the form of treble damages; and

6.      Any other relief deemed by the Court, just, equitable, necessary and/or appropriate.

WHEREFORE, Plaintiffs SBG Management Services, Inc. and Colonial Garden Realty, LP requests that this Honorable Court to grant the Relief identified in Plaintiffs' Complaint.

**Moriconi Flowers Ltd.**

By:     */s/Theodore C. Flowers*
        Theodore C. Flowers, Esquire
        PA ID#82218
        ted@moriconiflowers.com
        8080 Old York Road, Suite 225
        Elkins Park, PA 19027
        Tel.    (215) 277-1410
        Fax     (215) 277-1752

42

Donna Ross, Esquire

By: _/s/Donna S. Ross_
       Donna S. Ross, Esquire
       PA ID#59747
       Dsross90@gmail.com
       208 Eisenhower Lane
       North Wales, PA  19454
       Tel.    (484) 888-9578
       Fax.   (610) 738-4920
       Attorneys for SBG Management
       Services, Inc. et. al

Date: August 31, 2017